# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD BURNHAM and JANIE BURNHAM,

Plaintiff-Appellants,

v

HOBBY LOBBY STORES, INC., KERR
MONROE, LLC, and KERR-REAL ESTATE,
LLC,

Defendant-Appellees.

UNPUBLISHED
March 1, 2016

No. 324867
Monroe Circuit Court
LC No. 13-035273-NO

Before: SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs, Donald and Janie Burnham, appeal as of right the trial court's October 10, 2014 order granting summary disposition to defendants, Hobby Lobby Stores, Inc., Kerr Monroe, LLC, and Kerr-Real Estate, LLC, pursuant to MCR 2.116(C)(10). We affirm.

On July 27, 2012, Janie Burnham (Burnham) slipped and fell in a puddle of water in what the parties describe as the "pit" area of a Hobby Lobby store in Monroe County. After sustaining various injuries as a result of her fall, Burnham filed this negligence lawsuit against Hobby Lobby Stores, Inc., Kerr Monroe, LLC, the landlord of the premises where Burnham slipped and fell, and Kerr-Real Estate, LLC, who is a member of Kerr Monroe, LLC. Defendants responded with motions for summary disposition, each arguing that the condition that caused Burnham's fall, i.e., the puddle of water, constituted an open and obvious danger. Thus, they concluded, no duty of care was owed to Burnham, and summary disposition was appropriate. The trial court agreed and granted summary disposition in defendants' favor. This appeal followed.

On appeal, plaintiffs first argue that the trial court erred in granting summary disposition in defendants' favor. Specifically, they argue that the trial court erred in concluding that the puddle of water was open and obvious. We disagree.

We review a trial court's decision on a motion for summary disposition de novo. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), courts are required to consider the pleadings, affidavits, and other evidence in a light most favorable to the nonmoving party. *Decker v Flood*, 248 Mich App 75, 81; 638 NW2d 163 (2001). Summary disposition pursuant to

-1-

MCR 2.116(C)(10) is appropriate "if the affidavits or other documentary evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*.

In premises liability actions, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the plaintiff suffered damages, i.e., the elements of negligence. *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). While a land possessor owes a duty of reasonable care to protect an invitee from unreasonable risks of harm posed by dangerous conditions on the land, that duty does *not* require a land possessor to protect an invitee from dangers that are open and obvious. *Id*. at 440-441. Open and obvious dangers cut off a land possessor's duty because "there is an overriding public policy that people should take reasonable care for their own safety and this precludes the imposition of a duty on a landowner to take extraordinary measures to warn or keep people safe unless the risk is unreasonable." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693-694; 822 NW2d 254 (2012) (citations and internal quotation marks omitted). A dangerous condition is open and obvious when "an average user with ordinary intelligence" would be "able to discover" it "upon casual inspection." *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 475; 499 NW2d 379 (1993).

In this case, viewing the evidence in a light most favorable to plaintiffs, *Decker*, 248 Mich App at 81, we conclude that the trial court correctly determined that the puddle of water constituted an open and obvious condition. All witnesses agreed that it was raining on the day that Burnham slipped and fell. Burnham admitted that "[i]t was raining." Burnham's daughter described the weather as being "[v]ery bad, very rainy, rainy all day." All witnesses who recalled observing the puddle of water also agreed that the puddle was, in fact, visible upon inspection. While Burnham herself did not recall seeing the puddle, Burnham's daughter described the puddle as "approximately 4' by 4' " and stated that nothing was hiding the puddle from view. A Hobby Lobby employee described the puddle of water as "two feet by one feet" and agreed that it was "easy to see." A second Hobby Lobby employee testified that it took nine or ten paper towels to clean up the puddle of water that remained after both Burnham's and Burnham's daughter's clothes became "soaked" or "saturated." Burnham testified that she was looking down while she was walking in a U-turn-type pattern and that nothing obscured her view of the floor apart from a "display cabinet" located near the puddle. Furthermore, Burnham admitted that "[a]ll of the back of [her] was wet" after the fall, providing even more evidence regarding the quantity of water visible on the floor. In sum, the testimony presented by both parties demonstrated that "an average user with ordinary intelligence" would have been "able to discover" the puddle of water "upon casual inspection." *Novotney*, 198 Mich App at 475. The fact that Burnham apparently did not, alone, is insufficient to alter this conclusion.

On appeal, plaintiffs contend that the puddle of water was not open and obvious because "Ms. Burnham's view of the water was blocked by the display cabinet." This argument is meritless. First, it ignores the fact that the proper inquiry asks, objectively, whether "an average user with ordinary intelligence" would be "able to discover" the puddle of water "upon casual inspection," *Novotney*, 198 Mich App at 475, not whether Burnham noticed it under the specific circumstances of this case. Furthermore, there is nothing in the record to support the proposition that the display cabinet somehow concealed the puddle of water. Indeed, all of the witnesses

who acknowledged seeing the puddle agreed that it was, in fact, visible. While plaintiffs now claim that the puddle of water "could only be observed when the average person got around the display cabinet," plaintiffs fail to articulate how Burnham "got around the display cabinet" enough to slip and fall in a puddle she allegedly could not see despite watching where she was walking. Plaintiffs also contend that the disparity in witnesses' descriptions of the size of the puddle support her position. This argument is likewise meritless. While there was some disparity in witnesses' descriptions of the puddle's size, i.e., four-by-four versus two-by-one, there was no disparity in witnesses' descriptions of the puddle's visibility—they all testified that it *was* visible. Thus, we reject these arguments.

Plaintiff also relies on two cases to support her position that summary disposition was inappropriate: *Andrews v K Mart Corp*, 181 Mich App 666; 450 NW2d 27 (1989), and *Watts v Mich Multi-King, Inc*, 291 Mich App 98; 804 NW2d 569 (2010). Because both of these cases are inapplicable to the matter at hand, this argument is meritless as well. *Andrews* is legally inapplicable to this case because it does *not* involve the open-and-obvious-danger doctrine. 181 Mich App at 668. *Watts* is factually inapplicable to this case in a variety of ways. The evidence presented in that case unequivocally indicated that it was not precipitating on the day of the fall. *Watts*, 291 Mich App at 99. That is not true here—Burnham and other witnesses testified that it had been raining hard for several hours before Burnham entered the store. Additionally, the evidence presented in that case included "no testimony or other evidence to demonstrate that the floor was visibly, let alone obviously, wet[.]" *Id*. at 103. That is not true here—each witness who acknowledged seeing the puddle admitted that it was clearly visible. Thus, as these are the *only* cases that plaintiffs rely on to support their position, we reject this argument as well.

Accordingly, because the puddle of water was open and obvious, we conclude that the trial court properly granted summary disposition in defendants' favor pursuant to MCR 2.116(C)(10).

On appeal, plaintiffs also take issue with the trial court's refusal to consider the affidavit of Theresa Sonoras. Plaintiffs provided Sonoras's affidavit on October 10, 2014, the morning of the hearing on defendants' motions for summary disposition, claiming that it was admissible pursuant to MCR 2.116(H). Specifically, plaintiffs claimed that Sonoras's affidavit should be admitted because plaintiffs' counsel was unsuccessful in contacting Sonoras until October 8, 2014. The trial court disagreed, concluding that it would not consider Sonoras's affidavit because discovery was already closed and because plaintiffs did not satisfy MCR 2.116(H). On appeal, plaintiffs again claim that Sonoras's affidavit was admissible pursuant to MCR 2.116(H). We, like the trial court, disagree.

We review a trial court's interpretation and application of a court rule de novo. *Henry v Dow Chemical Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). MCR 2.116(H) provides as follows:

(1) A party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure. The affidavit must

-3-

(a) name these persons and state why their testimony cannot be procured, and

(b) state the nature of the probable testimony of these persons and the reason for the party's belief that these persons would testify to those facts.

(2) When this kind of affidavit is filed, the court may enter an appropriate order, including an order

(a) denying the motion, or

(b) allowing additional time to permit the affidavit to be supported by further affidavits, or by depositions, answers to interrogatories, or other discovery.

Court rules, like statutes, are interpreted considering their plain language in an attempt to ascertain its meaning. *Henry*, 484 Mich at 495.

In this case, we agree with the trial court that plaintiffs failed, and continue failing, to satisfy the requirements of MCR 2.116(H). The record does not reflect *why* Sonoras's testimony regarding a slip and fall that she witnessed *more than two years earlier* could not be procured until only hours before the hearing. While plaintiffs contend that Sonoras "was not responding," they fail to articulate *why* she did not respond or, at the least, what attempts were made to obtain a response aside from indicating that there were "several" in the greater-than-two-year period between Burnham's fall and that hearing. Their argument is also belied by the following admission: "Discovery from Appellee dated September 19, 2014, three weeks before the Motion hearing, prompted Ms. Burnham to visit Ms. Sonoras. *At that time*, Ms. Sonoras agreed to speak with Appellant's counsel and sign an Affidavit[.]" (Emphasis added.) Additionally, the contents of Sonoras's affidavit (as described by plaintiffs) was duplicative in nature to that already present in the record. Furthermore, we also reject plaintiffs' argument that "if the trial court wanted more details, it could have asked Appellant's Counsel," because there is nothing in MCR 2.116(H) that places the burden on the trial court to assist a party in satisfying MCR 2.116(H).

In sum, because the puddle of water was open and obvious, we conclude that the trial court correctly granted defendants' motions for summary disposition. We therefore affirm the trial court's October 10, 2014 order granting summary disposition to defendants pursuant to MCR 2.116(C)(10).

Affirmed. Defendants, being the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Deborah A. Servitto
/s/ Henry William Saad
/s/ Colleen A. O'Brien

-4-